Filed 10/16/20  Marriage of Minkovitch CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re the Marriage of LINA and YAN MINKOVITCH. | B297022, B300374, B301994 (Los Angeles County Super. Ct. No. BD630832) |
| LINA MINKOVITCH, Respondent, v. YAN MINKOVITCH, Appellant. | |

APPEALS from a judgment and postjudgment orders of the Superior Court of Los Angeles County, John A. Slawson and Helen Zukin, Judges.  Affirmed in part and dismissed in part.

Yan Minkovitch, self-represented litigant, for Appellant.

No appearance for Respondent.

_____

## I.  INTRODUCTION

In this consolidated appeal, appellant Yan Minkovitch (husband) challenges a judgment of dissolution and several postjudgment orders.  In case number B297022, husband contends that the trial court erred in:  allocating the parties' former home (residence) to Lina Minkovich (wife); allocating a tax liability solely to husband; and calculating husband's income for purposes of child support.  In case number B300374, husband challenges the court's denial of his postjudgment motion to "clarify" an earlier order and the court's denial of his motion to set aside the judgment pursuant to Code of Civil Procedure section 473, subdivision (b).  Finally, in case number B301994, husband challenges the court's denial of his motion to modify the custody order.  We will dismiss the appeal from the order denying the motion for clarification.  We otherwise affirm.

# II. PROCEDURAL BACKGROUND

A.     *Dissolution Petition*

Husband and wife married on April 6, 2007, and had two daughters together. They separated on November 17, 2015. On November 20, 2015, wife petitioned for dissolution of marriage.

B.     *Judge Tamzarian's August 9, 2016, Order*

On June 24, 2016, following the sale of the residence, wife filed a request for an order allowing immediate distribution of the sales proceeds from the escrow account.

On August 9, 2016, Judge Armen Tamzarian ordered, among other things, that:

"[Wife] may withdraw $10,000 from the escrow account and h[a]lf for deposit. If [husband] is more than 5 days late on any support payment, [wife']s counsel may withdraw the support amount. [Wife's] counsel is to immediately notify [husband] in writing and reflect the remaining balance in the account."

C.     *Dissolution Trial*

The dissolution trial commenced on November 15, 2018, before Judge John A. Slawson. It concluded on December 19, 2018.

On April 2, 2019, Judge Slawson issued the judgment of dissolution. Among other things, the court granted the parties joint custody of the children. The court also ordered husband to pay child support.

D.    *Husband's Notice of Appeal and Subsequent Motions*

On April 15, 2019, husband filed three documents with the trial court.  First, he filed a notice of appeal from the April 2, 2019, judgment.

Second, he filed a request for order, specifically, "FOR CLARIFICATION OF THE COURT'S ORDER OF 8/9/2016, MADE BY [JUDGE] ARMEN TAMZARIAN."

Third, he filed a request for relief from the judgment of dissolution pursuant to Code of Civil Procedure section 473, subdivision (b).

Husband's request for clarification was assigned to Judge Helen Zukin, who conducted a hearing on the request on May 15, 2019.  Judge Zukin denied husband's request.

On May 30, 2019, Judge Slawson heard the motion for relief from judgment.  The court concluded that it did not have jurisdiction to rule on the motion and on July 2, 2019, denied it.

On August 29, 2019, husband filed notices of appeal, purporting to appeal from the May 15, 2019, and July 2, 2019, orders.

E.    *Request for Modification of Child Custody and Visitation*

On June 24, 2019, husband filed a request to modify the child custody order.

On September 11, 2019, Judge Zukin, following a hearing, denied husband's request for modification.

On October 18, 2019, husband filed a notice of appeal.

4

# III. DISCUSSION

## A. *Appeal of Judgment of Dissolution*

### 1. Background

During the marriage, in February 2013, husband and wife purchased the residence. Husband, who was, among other things, a real estate agent, acted as the agent for the purchase. On or about February 15, 2013, the sellers transferred the residence by grant deed to wife, "a married woman, as her sole and separate property." At around the same time, husband signed a quitclaim (interspousal deed), transferring his interest in the residence to wife, as her sole and separate property.[1]

In explaining why the transaction had been structured in this manner, husband testified that he wanted to apply the commission he earned from the transaction to the down payment for the residence but would be unable to do so if he were "part of the purchase." As to the reason for the interspousal transfer, husband testified: "[A]t the time I was working through my tax issues. So in order to not cloud the title with my tax issues, I quitclaimed my interest off until I could resolve those tax issues."

Husband's "tax issues" included a $195,000 debt that he owed to the IRS for his failure to pay taxes for the years 2010 and

---

[1] We recite the facts based on husband's testimony at trial, which was that these documents were signed at around the same time. The actual deeds are not part of the record on appeal. Later, husband's counsel contended (contrary to the testimonial evidence) that the interspousal deed was executed prior to the grant deed, which contention the court rejected.

2011.[2] During the course of their marriage, wife and husband did not file joint tax returns and the IRS sought to recover the tax debt from husband only. The IRS placed a lien on the residence.

Husband had also failed to pay taxes for years 2002 to 2006, prior to the marriage. The lien on the residence, however, was based only on husband's failure to pay taxes for 2010 and 2011.

Husband and wife maintained separate bank accounts during their marriage. In 2018, wife earned $50,835.69 in wages and had no other source of income. Wife regularly took out cash, or "payday loans," in order to pay her monthly bills.

Husband worked as a loan officer and real estate agent for a company called Mortgage Mavens, for which he received commissions, as reflected in Form 1099s. In addition, husband controlled various other companies. Husband earned income through both wages and commissions, as reflected in W-2s and Form 1099s, which husband submitted for review by the court. Husband's Form 1099s showed the following earnings for the following years: $182,613 for 2012, $236,544 for 2013, and $173,817 for 2015.[3]

The trial court made certain findings, which it incorporated into its judgment of dissolution. As relevant here, the court concluded that the residence belonged to wife as her separate

---

[2] Although wife's counsel proffered that husband owed over $142,000 in taxes, a notice of levy that is part of the record in case number B301994 reflects that the total amount due, as of August 9, 2016, was $195,286.02.

[3] The parties referred to a Form 1099 for 2014 but did not state on the record husband's earnings for that year.

property.  The court further found that "[husband] had experience, education, and history such that he was knowledgeable on the interspousal transfer deed and its consequences."

The trial court found that the community debts exceeded community assets.  Therefore, the court exercised its discretion under Family Code[4] section 2622, subdivision (b) to allocate the tax liability to husband only.  It stated, "In exercising its equitable abilities under the statute, the Court [finds] that it would be completely inequitable to burden [wife] with a debt that the [IRS] is pursuing against [husband] and not even pursuing against [wife]."

Finally, the trial court calculated the parties' income based on their submitted W-2s and, in husband's case, also his Form 1099s.  The court calculated wife's income to be $72,000 and husband's income to be $80,000, comprised of $21,600 from employee wages and $58,400 from self-employment.  Husband's counsel agreed with the court's calculations.  Further, husband did not object after the court stated:  "Let's take our time and make sure we're right.  But you both [counsel for husband and counsel for wife] have agreed.  So I'm going to blame it back on you if there's an error there somewhere."

When the trial court asked the parties their positions on its tentative decision to order husband to pay $131 monthly in child support, husband's counsel stated: "My client submits on that. We agree with the tentative."  Husband added, "Yes, sir."

---

[4]     Further statutory references are to the Family Code unless otherwise indicated.

7

2.      Legal Analysis

On appeal, husband challenges the judgment of dissolution, contending that the court erred in:  (1) finding that the residence was wife's separate property, (2) allocating the tax liability solely to him, and (3) calculating husband's income for purposes of child support.

"The trial court is generally required to 'divide the community estate of the parties equally.'  (§ 2550.)  In satisfying this mandate, 'the court must distribute both the assets and the obligations of the community so that the residual assets awarded to each party after the deduction of the obligations are equal.'  [Citations.]"  (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 924.)

As a general rule, property acquired by spouses during marriage, including earnings, is community property.  (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 12; see § 760; see also *In re Brace* (2020) 9 Cal.5th 903, 914–915 [Evid. Code, § 662's title presumption does not apply if it conflicts with § 760].)  As an exception to the general rule, "[m]arried persons may, through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community.  ([ ] § 850.)  A transmutation of property, however, 'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'  ([§§ 850,] 852, subd. (a).)  To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed."  (*In re Marriage of Valli*

8

(2014) 58 Cal.4th 1396, 1400.)  Further, "[i]f one spouse secures an advantage from the transaction, a statutory presumption arises under section 721 that the advantaged spouse exercised undue influence and the transaction will be set aside." (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 628–629.)  The presumption, however, is rebutted if the advantaged spouse can demonstrate that the disadvantaged spouse acted freely and voluntarily, with """"full knowledge of all the facts, and with a complete understanding of the effect of " the transaction."" [Citation.]" (*Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1353.)

"'To the extent that community debts exceed total community and quasi-community assets, the excess of debt shall be assigned as the court deems just and equitable, taking into account factors such as the parties' relative ability to pay.' (§ 2622, subd. (b).)" (*In re Marriage of Walrath, supra*, 17 Cal.4th at p. 924.)

We review the trial court's findings on the characterization of assets for substantial evidence.  (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887; *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.)  "But de novo review is appropriate where resolution of 'the issue of the characterization to be given (as separate or community property) . . . requires a critical consideration, in a factual context, of legal principles and their underlying values, the determination in question amounts to the resolution of a mixed question of law and fact that is predominantly one of law.' (*In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1015 . . . , citing *In re Marriage of Lehman*[ (1998)] 18 Cal.4th [169,] 184.)" (*In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 734.)

We review the court's assignment of debt under section 2622, subdivision (b) for abuse of discretion. (See *In re Marriage of Vanderbeek* (1986) 177 Cal.App.3d 224, 234.)

### a. Residence

Husband does not dispute that the interspousal transfer deed is a writing signed by him. Instead, he contends that the trial court erred in allocating the residence to wife as her separate property because it failed to consider the statutory presumption of undue influence[5] and its finding that the residence was wife's separate property therefore was not supported by substantial evidence. We disagree.

First, "[w]e presume the trial court knew and properly applied the law absent evidence to the contrary." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.) Thus, even if the court had not referred to the presumption of undue influence, we could presume that the court applied it. But, here, the court stated that husband "had experience, education, and history such that he was knowledgeable on the interspousal transfer deed and its consequences," which was an implicit finding that wife had rebutted the presumption of undue influence. That finding was supported by evidence that husband was a real estate agent and loan officer. Further, far from claiming that he was ignorant of the ramifications of either the grant deed or the interspousal deed, he testified that he had structured the transaction to

---

[5] Husband concedes that his counsel failed to raise this argument before the trial court. We will exercise our discretion to consider the matter.

10

transfer title to wife, in order to obtain a commission to which he would not otherwise be entitled and to avoid encumbering the residence with his tax liability. Thus, there was sufficient evidence that husband acted freely and voluntarily, indeed, strategically, with "'''"full knowledge of all the facts, and with a complete understanding of the effect of" the transaction.'''" (*Lintz v. Lintz, supra*, 222 Cal.App.4th at p. 1353.)

          b.     Tax Liability

We next consider husband's contention that the trial court erred in allocating the tax liability solely to him. We see no abuse of discretion in the court's conclusion that the equities supported such an allocation. Despite his high earnings, husband for many years did not pay any taxes. Indeed, husband had a long history, predating his marriage, of avoiding tax payments. Further, husband and wife maintained separate bank accounts during the marriage and wife frequently took out payday loans to pay her monthly expenses, which suggested that she did not enjoy the benefits of husband's tax avoidance. Finally, husband had a history of earning higher income than did wife, which supported a finding that he was better able to repay the tax debt. (See *In re Marriage of Vanderbeek, supra*, 177 Cal.App.3d at p. 235.)

c.   Imputation of Income for Child Support

Finally, we conclude that husband has waived any challenge to the trial court's calculation of his income. Not only did husband fail to object to the court's calculation of income, he expressly submitted to the court's tentative order that he pay $131 monthly in child support. (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 37 ["'[T]to conserve judicial resources, any errors [to the calculation of income] must be brought to the trial court's attention at the trial level while the [theoretical] error can still be expeditiously corrected'"].)

B.   *May 15, 2019, Order Denying Request for Clarification*

1.   Background

As discussed above, on August 9, 2016, Judge Tamzarian issued an order, which stated, in part: "[Wife] may withdraw $10,000 from the escrow account and h[a]lf for deposit. If [husband] is more than 5 days late on any support payment, [wife's] counsel may withdraw the support amount. [Wife's] counsel is to immediately notify [husband] in writing and reflect the remaining balance in the account." There is no reporter's transcript, settled statement, or agreed statement of the hearing in the record. Wife subsequently withdrew $10,000 from escrow (first $10,000 withdrawal).

During the course of the dissolution trial, the trial court found that husband owed $19,565 in child support arrearages. Husband sought certain credits against this amount. Husband's counsel requested a $10,000 credit for funds that wife had

12

withdrawn from escrow pursuant to the parties' March 9, 2017, stipulation (second $10,000 withdrawal). Husband's counsel expressly distinguished the second $10,000 withdrawal, which she referred to as "the additional 10,000," from the first $10,000 withdrawal. The parties disputed whether the March 9, 2017, stipulation permitted reallocation of the second $10,000 withdrawal. The court referred to Judge Tamzarian the issue of whether the second $10,000 withdrawal was subject to reallocation.[6]

Husband's counsel then requested a $10,000 credit for the first $10,000 withdrawal. The court denied that request, noting that because the residence was wife's separate property, any money that she withdrew from the proceeds of its sale should not be credited against husband's child support arrearages. The court's judgment specified that "the $10,000 drawn from the escrow account containing proceeds from the sale of [the residence] . . . pursuant to Court Order of August 9, 2016 subject to reallocation, was drawn from [wife's] separate property funds, and as such, does not constitute a child support payment made by [husband]." The court added that it "reserve[d] for Judge . . . Tamzarian to determine" whether the second $10,000 withdrawal "is subject to reallocation."

On April 15, 2019, husband filed a request "FOR CLARIFICATION OF THE COURT'S ORDER OF 8/9/2016, MADE BY [JUDGE] ARMEN TAMZARIAN." Husband asserted that during the dissolution trial, Judge Slawson "had some trouble determining whether or not the funds so expended were proper[l]y allocated to defray [husband's] support obligations."

---

[6]     The court preliminarily credited the second $10,000 against the arrearages.

Husband requested that the first $10,000 withdrawal be credited against his arrearages.

The matter was reassigned to Judge Helen Zukin, who, on May 15, 2019, held a hearing on husband's request. After reviewing the dissolution trial transcript and the judgment, Judge Zukin denied husband's request for clarification. That same day, the court issued a minute order denying husband's request.

### 2. Legal Analysis

"The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.) Husband contends that Judge Zukin's order denying his request for clarification is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2).[7] We disagree.

"Although Code of Civil Procedure section 904.1, subdivision (a)(2) makes appealable 'an order made after a judgment made appealable by paragraph (1),' this does not literally mean that *any* order after a previous judgment is appealable." (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403.) Specifically, "'[t]o be appealable, a postjudgment order must satisfy two additional requirements . . . . [¶] The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment . . . . [¶] The second requirement . . . is that "the

---

[7] In his brief, husband asserted the order was appealable pursuant to Code of Civil Procedure section 904.2. We presume this was an unintentional error, as that section applies to appeals from limited civil cases.

14

order must either affect the judgment or relate to it by enforcing it or staying its execution.""" (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1217.) The May 15, 2019, order does not satisfy the first requirement.

The issues raised by husband from the May 15, 2019, order are not different from those he raised in connection with the dissolution judgment, namely, his challenge of the trial court's designation of the residence as separate property such that husband was not entitled to a credit for the first $10,000 withdrawal. The May 15, 2019, order therefore is not an appealable postjudgment order. (*In re Marriage of Corona, supra*, 172 Cal.App.4th at p. 1217.) In any event, even if we were to consider the merits of husband's appeal, we would reject it as husband was not entitled to any purported "clarification."

## C. *July 2, 2019, Order Denying Motion for Relief*

Husband next contends that the trial court erred in denying his motion for relief from judgment pursuant to Code of Civil Procedure section 473, subdivision (b).

### 1. Background

As discussed, on April 15, 2019, husband filed a motion for relief from judgment.

On May 30, 2019, Judge Slawson heard the motion and concluded that the trial court lacked jurisdiction to rule on the motion because of the pending appeal from the judgment.

15

On July 2, 2019, Judge Slawson issued his "Findings And Order After Hearing," which denied husband's motion for lack of jurisdiction.

### 2. Legal Analysis

Husband's contention that his filing of a notice of appeal did not divest the trial court of jurisdiction to consider his motion is meritless. (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 198 ["[Code of Civil Procedure] section 916, as a matter of logic and policy, divests the trial court of jurisdiction over the subject matter on appeal—i.e., jurisdiction in its fundamental sense"]; *Kroger Co. v. Workers' Comp. Appeals Bd.* (2012) 210 Cal.App.4th 952, 959 [appeal is perfected when notice of appeal is filed].) The court correctly concluded that it lacked jurisdiction to consider defendant's motion.

### D. *Order Denying Request for Modification of Child Custody Order*

### 1. Background

On June 24, 2019, husband filed a request to modify the child custody order to grant him sole legal and physical custody of the children. Husband contended that wife: medicated, that is, vaccinated, the children without notice; discussed the divorce proceedings with the children and solicited information from them; asked the children to lie to a doctor, who had been appointed by the trial court for purposes of the dissolution proceeding; interfered with the children's therapy by purportedly

not cooperating with husband regarding an agreed therapist; disparaged husband to the children, including using derogatory language; failed to protect the children from "many, many, insect bites"; lived with the children in a one-bedroom apartment, where the youngest child did not have her own bed, and instead shared a bed with wife; "cavalierly" cancelled the children's medical insurance, which was subsequently reinstated; and did not help the children with their studies, with their grades being "very low."

Husband supported his request with his own declaration and over a hundred pages of exhibits, including communications between husband and wife on Talking Parents. On August 19, 2019, husband submitted a supplemental declaration attaching purported transcripts of telephone calls between and among wife, husband, and the children. One of the conversations was identified as having occurred on April 15, 2019. The other conversations were not identified by date. He also attached updated Talking Parents communications, husband's purported "log" detailing wife's actions beginning in 2015, medical records of doctor visits for the children from 2016 and 2017, wife's cell phone records from 2016, screenshots of texts from 2016, communications with prosecutors from 2015 and 2016, communications between husband's prior counsel and wife's counsel from 2016 and 2017, reports of monitored visits with the children from 2015, police records from 2016, and discovery requests from 2016.

Wife opposed the request for modification. She declared that she had advised husband of the annual physical check-up, during which one of the daughters received three vaccinations. She attached a copy of the Talking Parents message advising

husband of the upcoming yearly checkup.  She agreed that the daughters had mosquito bites and that she now lived in a one-bedroom apartment, but declared that each daughter had a separate bed in a shared bedroom and that when she had custody of the daughters, she slept in the living room.  She explained that husband had never been to wife's home and thus did not know its setup.  She denied husband's other allegations, stating that she helped the girls with their homework.

Wife requested that the trial court impose sanctions pursuant to section 271 and submitted her counsel's declaration in support.  Wife's counsel declared that during the course of these proceedings, husband had filed approximately 40 requests for orders, including multiple requests to modify custody and support, all of which were denied.  Counsel also explained that husband had filed additional civil actions against wife, wife's friends, and wife's counsel.  Counsel detailed the time she and her colleague had spent opposing husband's most recent request for modification and requested $4,650 in attorney fees.

On September 11, 2019, Judge Zukin conducted a hearing on husband's request for modification.  She asked husband, who was self-represented, what he contended to be the material change in circumstances that supported his request for modification.  Husband responded that wife was now "living in a smaller apartment where . . . one of our children does not have her own bed."

After noting that wife had declared that both daughters had their own bed, the trial court asked wife, "Does [daughter] sleep in her own bed?"

Wife responded, "Yes she does.  Both of them do."

Husband proffered that this was "a false statement, and I would actually like to—that's a completely false statement, and I'll be able to prove that up during my examination."

The trial court responded: "We've dealt with these issues before. Go on. What else is new, other than the bed?"

Husband responded, without evidentiary support, that the children were getting lower grades and that wife had moved farther away from her work and the children's school, and "ha[d] less time with the kids, leaving the kids, you know—leaving the kids unattended and un—not only unattended, but unavailable to do homework with them and various other things. [¶] So although I understand you wanting to be brief, I wanted to call [wife] to the stand in order to ask her some questions in order to clarify my position via her testimony."

The trial court denied husband's request to examine wife, but permitted husband to continue his testimony, during which he repeated many of the statements in his request for modification. At the conclusion of husband's testimony and argument, the court again denied his request to cross-examine wife.

Next, the trial court asked wife a number of questions. For instance, the court asked whether wife had left the children unattended. Wife responded that she had not. Further, wife explained that she had been living in the smaller one-bedroom apartment for two and a half years and that she had moved into it prior to the court's entry of the judgment of dissolution.

The court again asked wife about the sleeping arrangements. Wife repeated that the girls slept in the single bedroom and wife slept in the living room on the couch.

The court then asked wife to respond to husband's allegation that she had medicated the children. Wife explained that she had advised husband about the doctor's appointment and that during the appointment, daughter had received a vaccination that was required to attend school.

The court then permitted husband to respond. Husband reminded the court that he had submitted transcripts of wife's telephone calls with the daughters. He also explained why he believed he needed to sue various people, including wife's counsel. Finally, he stated his belief, based on his daughter's statements to him, that wife slept with younger daughter "99 percent of the time." Husband did not dispute wife's testimony that she had moved prior to the entry of judgment or that he had never been inside her apartment.

After hearing the testimony, the court stated that it had reviewed the entire file, the submitted declarations, and the exhibits. The court stated that it found "a number of [husband's] complaints regarding [wife's] parenting" not to be credible. The court further observed that the exhibits demonstrated that husband had inappropriately used Talking Parents to threaten wife with litigation and to advance his litigation strategy. Even assuming that the children were struggling in school, the court concluded that husband was partially at fault as he had engaged in excessive litigation and involved the children in litigation. The court denied husband's request for modification, concluding that there was no material change in circumstances since the time of the 2019 judgment.

The trial court next considered wife's motion for sanctions. It concluded that "this was an unnecessary motion. [T]here is a history in this litigation of over litigation on the part of

[husband]." The court therefore awarded wife $2,500 in attorney fees as a sanction.

2.    Legal Analysis

Husband contends that the trial court erred "by failing to state on the record or in writing the reasons for its denial of [his] right to introduce the live testimony of the other party during the hearing." We find no prejudicial error.

We disagree with husband's characterization of the trial court's ruling as one denying him the opportunity to introduce "live testimony." The court considered the live sworn testimony of both husband and wife. (Cf. *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 837, 841 [finding reversible error when trial court modified spousal support order based solely on declaration of ex-wife, who did not appear at the hearing].) Thus, husband's argument, properly construed, is that the court limited his ability to cross-examine wife, in violation of Evidence Code section 773. We will assume, without expressly deciding, that the court erred in prohibiting husband from cross-examining wife.

Husband has failed to demonstrate that he was prejudiced by any assumed error. (See *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 [generally, most procedural errors will not be reversed absent a showing of prejudice]; see also *Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161 ["To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached'"].) Husband never explained in the trial court what he expected to elicit from cross-examination, proffering only that such examination would "clarify [his] position." On appeal, husband

21

contends that the court should have stricken wife's testimony and declaration, and had it done so, it would have granted husband's request because his exhibits "support[ed] all of his factual allegations." We disagree. Most of husband's exhibits related to conduct that predated the entry of judgment. Further, there was no admissible evidence to support his allegations that daughter did not sleep in her own bed or that wife did not pay sufficient attention to the daughters. Husband cited only his daughter's hearsay statement that she did not usually sleep in her bed and did not introduce any evidence to support his allegation that his wife did not spend sufficient time with the daughters.[8] On this record, husband cannot demonstrate that but for the court's assumed error, it was reasonably probable that the court would have found a "'significant change of circumstances'" and modified the child custody arrangement in his favor. (See *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956; *In re Marriage of McKean* (2019) 41 Cal.App.5th 1083, 1089.)

---

[8] In his declaration, husband alleged that wife "does not ever work with the girls on their schoolwork," and at the hearing, he alleged that wife left the girls unattended. Neither allegation was supported by admissible evidence.

## IV.  DISPOSITION

The appeal from the May 15, 2019, order is dismissed.  The April 2, 2019, judgment, the July 2, 2019, order denying appellant's motion for relief from judgment, and the September 11, 2019, order denying appellant's request for modification are affirmed.  Because respondent did not appear, no costs are awarded.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


We concur:


RUBIN, P. J.


BAKER, J.

23