Filed 1/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUSAN D. LINTZ, et al., | H037738 |
| Plaintiffs and Respondents, | (Monterey County Super. Ct. No. MP19531) |
| v. | |
| LOIS LYNNE LINTZ, | |
| Defendant and Appellant. | |

Defendant Lois Lynne Lintz appeals from a judgment of financial elder abuse, undue influence, breach of fiduciary duty, conversion of separate property, and constructive trust. Defendant challenges only the remedial aspect of the judgment. She argues that the probate court erred by voiding her deceased husband's testamentary trusts and trust amendments executed after May 2005 without proof of undue influence in connection with the execution of those documents. She argues further that the probate court's invalidation of the trust documents unconstitutionally interferes with her marital relationship.

Although the probate court applied the incorrect standard for legal capacity and failed to apply a presumption of undue influence to the interspousal transactions at issue here, we will affirm the judgment because it is amply supported by the evidence, especially in light of the higher burdens incorrectly placed on plaintiffs below, and we find no error in the remedy.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant was the third wife of decedent Robert Lintz.  The couple married in 1999, divorced approximately six months later, and remarried in February 2005.  Their second marriage ended when decedent died in October 2009 at age 81.  Defendant has two children from a previous marriage.  Decedent had three children from two previous marriages, and two grandchildren.  When decedent remarried defendant in 2005, he was a retired real estate developer worth millions of dollars.  Decedent had a complicated estate plan, with holdings in both northern and southern California.  Decedent's northern California estate plan was contained in the Robert Lintz Trust (the trust) and a series of amendments to the trust, prepared over the years by decedent's estate lawyers.  The ninth amendment to the trust, in effect when decedent and defendant remarried, provided for decedent's children, grandchildren, and former son-in-law upon decedent's death.

In May 2005 decedent executed a tenth amendment to the trust.  The tenth amendment provided defendant with fifty percent of decedent's assets upon his death, with the remaining fifty percent to be distributed among decedent's children and grandchildren.  Between May 2005 and 2008 decedent executed several additional trust amendments, increasingly providing defendant with more of decedent's assets upon his death and disinheriting his two eldest children.  Ultimately, in June 2008 defendant and decedent, as joint settlors and trustees, executed the Lintz Family Revocable Trust.  The trust, prepared by defendant's attorney at defendant's direction, purportedly designated all of decedent's property as community property, gave defendant an exclusive life interest in decedent's estate, and gave defendant the right to disinherit decedent's youngest child and leave any unspent residue to defendant's two children.

Upon decedent's death, decedent's older children, plaintiffs Susan Lintz and James Lintz, as decedent's successors in interest, filed a second amended complaint

2

against defendant alleging several causes of action including fiduciary abuse of an elder, breach of fiduciary duty, conversion, constructive trust, and undue influence.[1]  Following a 15-day bench trial, the probate court issued a 25-page statement of decision finding defendant liable for financial elder abuse under Welfare and Institutions Code section 15610.30, breach of fiduciary duty, conversion of separate property funds, and finding defendant in constructive trust of decedent's converted funds and trust property.  The court ruled that decedent had testamentary capacity to execute the trust instruments, but it found defendant liable for undue influence in the procurement of decedent's estate plans.

Among several remedies, the probate court voided all trusts and trust amendments following the tenth amendment to the trust, invalidated real property deeds, and took steps to implement the terms of the tenth amendment.  The court concluded that much of defendant's spending during her marriage to decedent constituted acts of financial abuse and conversion, and awarded plaintiffs attorney's fees and costs for proving financial elder abuse under Welfare and Institutions Code section 15610.30.

## II.  DISCUSSION

### A.    LEGAL CAPACITY STANDARD

Probate Code sections 810 to 812 set forth a mental capacity standard related to certain legal acts and decisions.  Section 810 establishes a rebuttable presumption "that all persons have the capacity to make decisions and to be responsible for their acts or decisions," recognizing that persons with mental or physical disorders "may still be capable of contracting, conveying, marrying, making medical decisions, executing wills or trusts, and performing other actions."  (Prob. Code, § 810, subds. (a), (b).)  Section 811, subdivision (a) provides that a person lacks capacity when there is a deficit in at least one identified mental function and "a correlation [exists] between the deficit or

---

[1]  Plaintiffs commenced the lawsuit before decedent's death in conjunction with a conservatorship petition as proposed guardians ad litem.

3

deficits and the decision or acts in question." Section 812 provides: "Except where otherwise provided by law, including, but not limited to, . . . the statutory and decisional law of testamentary capacity, a person lacks the capacity to make a decision unless the person has the ability to communicate . . . the decision, and to understand and appreciate, to the extent relevant . . . : [¶] (a) The rights, duties, and responsibilities created by, or affected by the decision[;] [¶] (b) The probable consequences for the decisionmaker and, where appropriate, the persons affected by the decision[; and] (c) [¶] The significant risks, benefits, and reasonable alternatives involved in the decision." (Prob. Code § 812, subds. (a)-(c).)

In contrast, Probate Code section 6100.5, the standard applied by the probate court, contemplates a significantly lower mental capacity standard for the making of a will, requiring only that the person understand the nature of the testamentary act, the nature of the property at issue, and his or her relationship to those affected by the will, including parents, spouse, and descendents. (Prob. Code, § 6100.5.)

In *Anderson v. Hunt* (2011) 196 Cal.App.4th 722, 730 (*Anderson*) the court addressed "the measure by which a court should evaluate a decedent's capacity to make an after-death transfer by trust." *Anderson* ruled that Probate Code section 6100.5 applied to the mental competency to make a will, not to a testamentary transfer in general. It thus rejected the notion that the decedent's competency was determined under Probate Code section 6100.5. The court explained that Probate Code sections 810 through 812 do not impose a single standard of contractual capacity. Because each section provides that capacity be evaluated in light of the complexity of the decision or act in question,[2] capacity to execute a trust "must be evaluated by a person's ability to

---

[2] Probate Code section 811, subdivision (a) requires "*evidence of a correlation between the deficit and the decision or act in question.*" (*Anderson*, *supra*, 196 Cal.App.4th at p. 730.) Probate Code section 811, subdivision (b) provides that a deficit in mental function is relevant only to the extent "it significantly impairs the person's ability to appreciate the
*(Continued)*

4

appreciate the consequences *of the particular act he or she wishes to take*." (*Anderson*, *supra*, at p. 730.) Indeed, "[m]ore complicated decisions and transactions thus would appear to require greater mental function; less complicated decisions and transactions would appear to require less mental function." (*Ibid*.)

Anderson further concluded that, when a trust amendment closely resembles a will or codicil "in its content and complexity," a court should look to Probate Code section 6100.5 to determine whether, under Probate Code section 811, subdivision (b), a person lacks the mental function " 'to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question.' " (*Anderson*, *supra*, 196 Cal.App.4th at p. 731.) "[W]hile section 6100.5 is not directly applicable to determine competency to make or amend a trust, it is made applicable through section 811 to trusts or trust amendments that are analogous to wills or codicils." (*Ibid*.) Because the trust amendments in *Anderson* merely reallocated the percentage of the trust estate among beneficiaries, the court considered them indistinguishable from a will or codicil and concluded that the decedent's capacity should have been evaluated under the lower capacity standard of Probate Code section 6100.5. (*Anderson*, *supra*, at p. 731.)

Adopting the reasoning of *Anderson*, we conclude that the probate court erred by applying the Probate Code section 6100.5 testamentary capacity standard to the trusts and trust amendments at issue in this case instead of the sliding-scale contractual standard in Probate Code sections 810 through 812. The trust instruments here were unquestionably more complex than a will or codicil. They addressed community property concerns, provided for income distribution during the life of the surviving spouse, and provided for

---

consequences of his or her actions *with regard to the type or act or decision in question*." (*Anderson, supra,* at p. 730.) And under Probate Code section 812, a person's capacity is evaluated with regard to "the rights, duties, consequences, risks and benefits '*involved in the decision*.' " (*Anderson, supra,* at p. 730.)

the creation of multiple trusts, one contemplating estate tax consequences, upon the death of the surviving spouse.

**B.    UNDUE INFLUENCE PRESUMPTION**

In property-related transactions between spouses, Family Code section 721, subdivision (b) "imposes a duty of the highest good faith and fair dealing on each spouse . . . ." This duty stems from the "general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other," prohibiting each spouse from taking "any unfair advantage of the other." (*Ibid*.) Thus, " '[i]f one spouse secures an advantage from the transaction, a statutory presumption arises under section 721 that the advantaged spouse exercised undue influence and the transaction will be set aside.' " (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.) An advantage results to one spouse when that spouse gains or when the other spouse is hurt by the transaction. (*Gaines v. California Trust Co*. (1941) 48 Cal.App.2d 709, 714.) A spouse obtains an advantage when the "spouse's position is improved, he or she obtains a favorable opportunity, or otherwise gains, benefits, or profits. (Citation.)" (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 629.) The presumption is rebuttable; the spouse advantaged by the transaction must establish that the disadvantaged spouse acted freely and voluntarily, with " ' "full knowledge of all the facts, and with a complete understanding of the effect of the" transaction.' " (*In re Marriage of Fossum*, *supra*, 192 Cal.App.4th at p. 344.)

Family Code section 721 applies here. Although we were not provided with transcripts of the two-day closing arguments, there is no indication in the record before us that the probate court applied the presumption of undue influence arising from that section. The presumption should have been applied to the transmutation of decedent's separate property to community property and to the huge sums of money decedent transferred to defendant. It also should have been applied to the Lintz Family Revocable Trust, which was a contract between decedent and defendant both as settlors and as

6

trustees.  (*In re Estate of Bodger* (1955) 130 Cal.App.2d 416, 424 ["A declaration of trust constitutes a contract between the trustor and the trustee for the benefit of a third party."].)  The trust advantaged defendant by granting her an exclusive and virtually unfettered life estate in decedent's property, disinheriting two of decedent's three children, and giving defendant the right to disinherit decedent's third child and pass decedent's property either to her own children or to her individual estate.

The probate court should have applied the presumption of undue influence, thereby shifting the burden to defendant to rebut the presumption.  Even without that burden, defendant did not prevail on the issue of undue influence below.  Our conclusion that the presumption applies only weakens her position on appeal.

## C.  CHALLENGES TO UNDUE INFLUENCE FINDING

Consistent with common law, our Supreme Court has described undue influence, in the context of a testamentary disposition of property by will or trust, as "pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency."  (*Rice v. Clark* (2002) 28 Cal.4th 89, 96 (*Rice*); see also *Hagen v. Hickenbottom* (1995) 41 Cal.App.4th 168, 182 [applying testamentary principles of undue influence to estate plans executed by inter vivos trust and pour-over will].)

Defendant argues that the probate court erred by voiding all trust instruments executed after the May 2005 tenth amendment based on a finding that defendant exerted undue influence, without evidence of such influence being exercised at the time the documents were actually signed.  Defendant concedes the court's factual findings are sufficient to support liability for financial elder abuse under Welfare and Institutions Code section 15610.30, but she argues that they are insufficient to void a testamentary document.  As framed, the issue presents a question of law that we review de novo.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

7

### 1.     Undue Influence May Be Proven By Circumstantial Evidence

In *In re Welsh* (1954) 43 Cal.2d 173, quoting *Estate of Gleason* (1913) 164 Cal. 756, 765, the Supreme Court recognized the settled law that undue influence requires a showing that the testator's free will was overpowered "at the very time the will was made."  Defendant relies on the quoted language in *In re Welsh* to argue that no evidence established that decedent's free will was overborne at the time the testamentary documents were executed.  Given the extensive circumstantial evidence supporting the probate court's undue influence finding, we can only understand defendant to be arguing that plaintiffs failed to produce any direct evidence of undue influence at the time decedent signed the testamentary documents.  But plaintiffs are not required to prove their case by direct evidence.

"Direct evidence as to undue influence is rarely obtainable and hence a court or jury must determine the issue of undue influence by inferences drawn from all the facts and circumstances."  (*Hannam v. Griffith* (1951) 106 Cal.App.2d 782, 786; see also *David v. Hermann* (2005) 129 Cal.App.4th 672, 684 [proof of undue influence in the execution of a testamentary instrument by circumstantial evidence usually requires a number of factors]; *In re Estate of Easton* (1934) 140 Cal.App. 367, 371 [requiring direct or circumstantial evidence of "pressure which overpowers the volition of the testator and operates directly on the testamentary act"].)  Thus, while pressure must be brought to bear directly on the testamentary act, the pressure, or undue influence, may be established by circumstantial evidence.  (*In re Estate of McDevitt* (1892) 95 Cal. 17, 33.)  As a matter of law, the probate court's undue influence finding need not be supported by direct evidence of undue influence at the moment decedent signed the trust instruments.

### 2.     The Undue Influence Finding was Separate From the Welfare and Institutions Code Financial Elder Abuse Finding

We reject defendant's assertion that the probate court's undue influence finding was made under Welfare and Institutions Code section 15610.30.  The version of Welfare

and Institutions Code section 15610.30 in effect at trial provided that financial abuse of an elder occurred when property was taken for a wrongful use, or with intent to defraud, or by undue influence as defined in Civil Code section 1575. Civil Code section 1575 defines undue influence as: "(1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) In taking an unfair advantage of another's weakness of mind; or (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress." Some courts have required the same undue influence showing under Civil Code section 1575 as is required to void a testamentary document under the Probate Code. For example, in *Keithley v. Civil Service Bd.* (1970) 11 Cal.App.3d 443, 451, an unlawful discharge case, the First District Court of Appeal, citing to *In re Estate of Bixler* (1924) 194 Cal. 585 (a will contest case) described the inquiry under section 1575 as whether "one's will was overborne and he was induced to do or forbear to do an act which he would not do, or would do, if left to act freely." In *Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 132, also involving an employment matter, the Second District Court of Appeal described undue influence as "occur[ring] whenever there results 'that kind of influence or supremacy of one mind over another by which that other is prevented from acting according to his own wish or judgment, and whereby the will of the person is overborne and he is induced to do or forbear to do an act which he would not do, or would do, if left to act freely.' (Citation.)"[3]

---

[3] During the pendency of this appeal, the Legislature amended Welfare and Institutions Code section 15610.30, subdivision (a)(3) replacing "by undue influence, as defined in Civil Code section 1575" with "by undue influence, as defined by section 15610.70." (Assem. Bill No. 140 (2013-2014 Reg. Sess.) § 2.) The Legislature added a new section 15610.70 to the Welfare and Institutions Code, defining undue influence as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity," and listing factors to be

*(Continued)*

9

The probate court cited Welfare and Institutions Code section 15610.30 to impose financial elder abuse liability as to plaintiffs' first cause of action for fiduciary abuse of an elder. This liability is supported by the court's findings that "[decedent] did not know the extent of [defendant's] spending," and that "[w]hile it is not uncommon for a spouse to spend money or purchase items of which the other is unaware, and the line between such conduct and financial abuse is not always clear, what [defendant] did in this case went well beyond the line of reasonable conduct and constituted financial abuse," and the court's further conclusion that much of defendant's credit card spending and writing herself checks from decedent's bank account during the marriage amounted to financial abuse.

In addition to finding defendant liable for Welfare and Institutions Code section 15610.30 financial elder abuse, the probate court found defendant liable under plaintiffs' separately pleaded fifth cause of action for undue influence. On that cause of action, the court concluded defendant exerted undue influence specifically "to procure estate plans and control over assets, according to [defendant's] wishes and contrary to the wishes of [decedent]." In support of its finding, the court cited Civil Code section 1567,[4] Probate

considered in making an undue influence determination under section 15610.30. (Assem. Bill No. 140 (2013-2014 Reg. Sess.) at § 3.) The Legislature also added section 86 to the Probate Code, providing that undue influence under the Probate Code has the same meaning as it does under Welfare and Institutions Code section 15610.70. (Assem. Bill No. 140 (2013-2014 Reg. Sess.) § 1.) While this legislation, effective January 1, 2014, does not affect our analysis, it eliminates any doubt that the two standards are now the same. Although the new reference to "excessive persuasion" may not be entirely clear, perhaps calling to mind Aristophanes' *Lysistrata*, the Legislature declared that the newly applied definition is not intended to supersede or interfere with the common law meaning of undue influence. (*Ibid.*)

[4] Civil Code section 1567 provides: "An apparent [contractual] consent is not real or free when obtained through: [¶]1. Duress; [¶]2. Menace; [¶]3. Fraud; [¶]4. Undue influence; or, [¶]5. Mistake."

10

Code section 6104,[5] and *Keithley v. Civil Service Bd.*, *supra*, 11 Cal.App.3d at p. 451 (describing undue influence as "whether from the entire context it appears that one's will was overborne and he was induced to do or forbear to do an act which he would not do, or would do, if left to act freely."). It is clear from the statement of decision that the court made the undue influence finding as to the fifth cause of action under the Probate Code, not the Welfare and Institutions Code.

### 3. The Probate Court Applied the Proper Undue Influence Standard to Void the Trust Documents

We are also unpersuaded by defendant's argument that the probate court conflated the former Welfare and Institutions Code section 15610.30 undue influence standard with the standard for undue influence under Probate Code section 6104. We note that defendant does not challenge the findings of fact or conclusions of law contained in the statement of decision, and we therefore presume them to be correct on appeal. (*In re Marriage of Arceneaux* (1991) 51 Cal.3d 1130, 1133.) We presume the evidence supports the conclusion that defendant used undue influence over decedent "to procure estate plans . . . , according to her wishes and contrary to the wishes of decedent." But even without that presumption, the statement of decision establishes the undue influence required to void a testamentary document; defendant's influence overcame decedent's free will and operated directly on the testamentary acts voided by the trial court. (*Rice*, *supra*, 28 Cal.4th at p. 96.)

The probate court described decedent as "helpless[] and susceptible[] to [defendant's] wishes and influence beyond the susceptibility which is normal incident of [*sic*] a marital relationship." According to the statement of decision, decedent was fearful

---

[5] Probate Code section 6104 provides: "The execution or revocation of a will or a part of a will is ineffective to the extent the execution or revocation was procured by . . . undue influence."

11

of defendant and unable to exercise his free will over her when it came to his money. Defendant took an increasingly active role in procuring decedent's estate plans following the tenth amendment, increasingly benefiting from the later amendments. Defendant misinformed decedent's lawyers of decedent's testamentary wishes and ultimately discontinued the services of decedent's long-standing estate planning lawyers under the pretext of a fee dispute. The probate court also noted that decedent signed the Lintz Family Revocable Trust-the most recent estate plan prepared by defendant's lawyer-outside the presence of his new counsel and against new counsel's advice. That document provided for unspent residue to be left to defendant's children, and it gave defendant the power to disinherit decedent's youngest child whom he adored. Decedent's execution of that estate plan was inconsistent with the statement he made to his lawyer ("Why shouldn't we leave the property to [decedent's youngest child]?") on the same day defendant insisted to the lawyer that decedent wanted everything left to her. It was also inconsistent with decedent's great dislike for one of defendant's children. (*Hagen v. Hickenbottom*, *supra*, 41 Cal.App.4th at p. 182 [undue influence in testamentary act requires showing that proven circumstances are inconsistent with voluntary action of testator].) We conclude the probate court applied the proper undue influence standard to void the trust documents.

## D. DEFENDANT'S PROBATE CODE SECTION 17200 ARGUMENT

Defendant argues for the first time in her reply brief that because plaintiffs failed to challenge the trust instruments under Probate Code section 17200, subdivisions (a) and (b), defendant was deprived of the opportunity to invoke "the well established rules pertaining to contests over testamentary instruments based upon an allegation of undue influence." Although defendant waived this argument by failing to raise it in her opening brief (*People v. JTH Tax, Inc*. (2013) 212 Cal.App.4th 1219, 1232), we also reject the argument on the merits. In the second amended complaint, plaintiffs alleged undue influence based on defendant's "changing [decedent's] long standing estate plan." In

12

addition to seeking a determination of undue influence, plaintiffs sought a determination that the Lintz Family Trust was invalid, and sought additional relief as the probate court deemed just and proper.  Thus, plaintiffs put defendant on notice of their undue influence cause of action as it related to decedent's testamentary instruments, providing defendant the opportunity to invoke any "well-established rules" in defense of such a claim.

E.    DEFENDANT'S SANCTITY OF MARRIAGE ARGUMENT

Defendant argues that voiding the trust documents because she "spent 'too much' of her husband's money during his lifetime" violates the sanctity of her marriage to decedent under the California Constitution.  This argument fails because, as we explained above, the probate court did not void the trust documents on that basis.  Apart from the probate court's findings establishing that defendant spent decedent's money without his knowledge and against his wishes, the trial court made additional findings to support its undue influence determination.  Further, while the right to marry is protected by the California Constitution (*In re Marriage Cases* (2008) 43 Cal.4th 757, 809), the Constitution does not diminish defendant's fiduciary obligations to her husband, nor shield her from liability for unlawful conduct.

## III. DISPOSITION

The judgment of the probate court is affirmed.

_____
Grover, J.

**WE CONCUR:**

_____
Rushing, P.J.

_____
Márquez, J.

14

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No. MP19531 |
| Trial Judge: | Hon. Thomas W. Wills |
| Counsel for Plaintiff/Respondent: | Albert J. Nicora<br>Nicora and Hespe, LLP<br><br>James Matthew Wagstaffe<br>Kerr & Wagstaffe |
| Counsel for Defendant/Appellant: | James L. Dawson<br>Nicholas Garrett Emanuel<br>Gates Eisenhart Dawson |