Filed 5/10/23  Piazzi v. Laffey CA2/4
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| DIANE E. PIAZZI,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>GERALD LAFFEY, JR., as Successor Trustee, etc.,<br><br>　　　Defendant and Respondent. | B305695<br><br>(Los Angeles County<br> Super. Ct. No. BP157757) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Daniel Juárez, Judge.  Affirmed.

　　　Nelle S. Paegel, for Plaintiff and Appellant.

　　　Law Offices of Keith S. Walker and Keith S. Walker, for Defendant and Respondent.

## INTRODUCTION

In this probate case, appellant Diane Piazzi petitioned to invalidate trust amendments made by her late mother, Evelyn Piazzi. Diane alleged that Evelyn lacked capacity to amend the trust and that she did so because she was unduly influenced by respondent Gerald Laffey (Evelyn's nephew) and other relatives. The case was tried to the probate court. The court granted a motion for judgment in Gerald's favor after Diane's case-in-chief. We affirm. Diane's failure to prove her claims is well supported by substantial evidence, and we reject Diane's other arguments on appeal.

## PROCEEDINGS BELOW

A. *Diane Petitions to Invalidate the Trust Amendments*

Due to disabilities, Diane receives means-tested public benefits. In June 1991, Diane's mother Evelyn created the Revocable Living Trust of Evelyn C. Piazzi. Through special needs trust provisions, the trust expressed Evelyn's intent that after her death, the trust estate would be used to supplement Diane's means-tested benefits without disqualifying her from continuing to receive them. In March 1999, Evelyn executed a first amendment to the trust, which deleted the special needs trust provisions and provided for the estate to be distributed directly to Diane after Evelyn's death.

In November 2002, Evelyn executed the second trust amendment, the heart of the parties' dispute. In lieu of a direct distribution to Diane, the amendment reinstated provisions to supplement and safeguard Diane's receipt of public benefits after Evelyn's death. It gave the successor trustee discretion to terminate the trust if the trust's existence or any related change in law would otherwise disqualify Diane from receiving any public benefits.

2

The amendment designated respondent Gerald and his mother (Evelyn's nephew and sister, respectively) as successor trustees.

Between June 2004 and September 2007, Evelyn executed three further trust amendments, adding one of Gerald's sisters (Evelyn's niece) as a third successor trustee.

Evelyn died in September 2014. In November 2014, Diane petitioned the probate court to invalidate the 2002 amendment and each subsequent amendment (collectively, the Trust Amendments). In May 2016, Diane filed her operative fourth amended petition, naming Gerald, his mother, and two of his sisters as defendants.

In Diane's first cause of action, she sought declaratory relief to invalidate the Trust Amendments on the grounds that: (1) the Trust Amendments were inconsistent with Evelyn's intent to provide for Diane after her death; (2) Evelyn lacked capacity to execute the Trust Amendments at the time she signed them; and (3) the Trust Amendments were the product of undue influence exerted on Evelyn by Gerald and his relatives. Diane also alleged, in passing, that the copies of the Trust Amendments in the parties' possession could not be authenticated as accurate copies of the originals.

In Diane's second cause of action, for breach of trust pursuant to Probate Code section 16400,[1] she alleged that with Gerald's encouragement and assistance, Gerald's mother and sisters committed theft and other crimes during a visit to Evelyn's home "the week prior to Evelyn's death." Diane did not allege that any defendant was the trustee at any time prior to Evelyn's death.

---

[1]     Undesignated statutory references are to the Probate Code.

B. *The Court Declines to Adjudicate Diane's Second Cause of Action*

Gerald demurred to Diane's fourth amended petition. In September 2016, the probate court (Judge William Barry) held a hearing on the demurrer. The court concluded that Diane had pled sufficient facts to support a claim for declaratory relief on her first cause of action. The court concluded that the second cause of action could not be pursued in the probate court, because Diane had not pled a breach of trust. The alleged theft at Evelyn's residence and other claimed misconduct occurred before any defendant became a trustee (with the exception of an allegation concerning Gerald's efforts to access trust funds, which the court found did not allege misconduct). Thus, concluded the probate court, while Diane might be able to pursue a civil action based on the facts alleged in the second cause of action, she could not pursue a probate action.

Although the probate court stated on the record that it would not adjudicate the second cause of action, the court believed that it was obligated for procedural reasons to overrule Gerald's demurrer as to that cause of action. In his moving papers, Gerald demurred to the entire petition, not to the separate causes of action. Since the court overruled the demurrer to the first cause of action, it believed it was improper to sustain a demurrer to the second cause of action given the way Gerald presented the demurrer. The probate court made clear that it was overruling Gerald's demurrer to the second cause of action only because of this procedural issue. The court stated that Diane was "on notice" that it was "not going to adjudicate a civil action in the context of this probate case."

The court directed Gerald's counsel to prepare a proposed order containing its rulings. However, Gerald's counsel did not immediately comply. In January 2017, during an unrelated hearing, the court renewed its

4

directions to Gerald's counsel to prepare a proposed order. The court specified that the proposed order should reflect the court's prior determination that it would not adjudicate any allegation that a defendant breached the trust at a time when the defendant was not the trustee.

On March 24, 2017, the probate court signed and adopted a proposed order submitted by Gerald's counsel as the final order overruling Gerald's demurrer. The order stated that because "there is no allegation in the Fourth Amended Petition that any of the Respondents was serving as Trustee at the time of the acts complained of," Diane's second cause of action "may not be litigated in this proceeding" and "will not be adjudicated at such time as this matter comes on for trial." The order contained a proof of service, which stated that on March 15, the proposed order had been served on Diane's counsel by overnight mail to her address of record.[2]

At trial in July 2019, the probate court (Judge Daniel Juárez) precluded Diane from litigating her second cause of action, relying on Judge Barry's March 24, 2017 order that the second cause of action would not be adjudicated. Diane's counsel objected that she had not received notice of the March 2017 order, but the court overruled the objection.

C. *Diane Presents Her Case-in-Chief*

Diane presented her case-in-chief at trial. Diane testified that after Evelyn's husband died in 1991, Evelyn began gambling regularly and stopped keeping food in her home, opting to eat out instead. Diane further testified that Evelyn had shingles in 1992 and subsequently suffered hearing loss.

---

[2] Four months later (in July 2017), Diane's counsel executed and served a notice of change of address, which she did not file with the court until November 2019.

Two friends of Evelyn's testified that Evelyn always kept her house extremely clean and orderly. Neither friend, however, viewed Evelyn's cleanliness as a symptom of obsessive-compulsive disorder (OCD) or observed any decline in Evelyn's mental faculties.

Gerald testified that he never observed any sign of OCD in Evelyn. Evelyn had a very close relationship with Gerald's mother (Evelyn's sister). Gerald had promised Evelyn that after her death, he would take good care of Diane.

Attorney Denise Kristof testified that she drafted the Trust Amendments. She explained that Evelyn's purpose in executing the 2002 amendment was to ensure that after her death, Diane would be taken care of and would continue receiving public benefits. Evelyn had "unwavering trust" that Gerald and his mother would care for Diane.[3] Kristof further testified that she was present when Evelyn executed the Trust Amendments and that she never had reason to doubt Evelyn's capacity.

Evelyn kept the original versions of the Trust Amendments (which were not produced at trial). Kristof testified that she had kept unaltered copies, which she had emailed to Diane in the wake of Evelyn's death. She testified that a copy of the 2002 amendment admitted into evidence as exhibit A—but omitted from the appellate record—appeared to be an authentic copy of the original.[4]

---

[3] Kristof refused to interpret the meaning of certain language in the 2002 amendment on the ground that she was not testifying as an expert witness. Contrary to Diane's suggestions on appeal, Kristof did not testify that she was incapable of interpreting the amendment or explaining it to Evelyn.

[4] Diane's counsel directed Kristof's attention to a page from her deposition transcript indicating that Diane's counsel showed Kristof an

Diane called a forensic document examiner, Patricia Fisher. Fisher testified that she had examined Gerald's copies of the Trust Amendments, which were separately admitted into evidence. Fisher testified that various pages of Gerald's copies bore marks—such as those left by staplers and hole punches—indicating that the documents had been disassembled, copied, and reassembled multiple times. On this basis, Fisher opined that Gerald's copies had been "altered." However, Fisher did not compare Gerald's copies to Kristof's to determine whether any content had been changed. Indeed, Fisher declined to express any opinion regarding whether Gerald's copies of the Trust Amendments had been altered in content. She explained: "That's not what I do as a document examiner."

Financial advisor Stephen Courtney testified that he handled investments and taxes for Evelyn. Although Evelyn acted against his investment advice on one occasion, he never had reason to question Evelyn's capacity. He stated that Evelyn was very organized and understood all of their tax discussions.

D. *The Court Grants Gerald's Motion for Judgment*

At the end of Diane's case-in-chief, Gerald's counsel moved for judgment under Code of Civil Procedure section 631.8.[5] The court heard argument and took the motion under submission.

---

unidentified document and Kristof responded, "That's not my document." Kristof testified at trial that she did not recall which document she had been referring to at her deposition. Nothing in the record identifies this document, notwithstanding Diane's assertions on appeal that it was a copy of the 2002 amendment.

[5] "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of

7

On August 30, 2019, the court issued a proposed statement of decision. It granted Gerald's motion for judgment and denied Diane's fourth amended petition. The court concluded that Diane had failed to satisfy her burden of proof on all of her claims: "There was no evidence that [Evelyn] did not intend to amend the Trust as she did in 2002, 2004, 2006, or 2007. What evidence there was supported the fact that [Evelyn] intended to make all amendments to the Trust that were at issue in this proceeding. There was no evidence that [Evelyn] did not have the capacity to amend the Trust. Thus, this court concludes [Evelyn] had capacity to amend the Trust. . . . There was no evidence that anyone unduly influenced [Evelyn] to amend the Trust. As such, the evidence failed to establish any of Petitioner's claims."

The proposed statement of decision summarized the testimony given by Diane and her witnesses. With respect to Fisher's opinion that Gerald's copies of the Trust Amendments had been altered, the court observed that Fisher "could not say what substantive text portions, if any, of the Trust had been altered," and found that "[n]one of Fisher's opinions substantiated Petitioner's argument that the Trust had been altered in any way that modified the substance of the Trust." The statement of decision also discussed the law concerning undue influence and noted that the court had considered the capacity standards set forth in sections 810 to 812.

Diane filed no objections, and the court adopted the proposed statement as its final statement of decision on September 24, 2019. In October 2019, Diane moved under Code of Civil Procedure section 1008 for reconsideration of the court's statement of decision. The court denied the motion. On February 11, 2020, the court issued a final order granting Gerald's motion for

the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision." (Code Civ. Proc., § 631.8, subd. (a).)

8

judgment and denying Diane's fourth amended petition, to which the court attached its statement of decision. Diane timely appealed.

## DISCUSSION

For the reasons below, we reject Diane's contentions on appeal. We hold: (a) Diane had the burden of proving the Trust Amendments invalid; (b) the probate court properly found Diane failed to meet that burden; (c) Diane's due process rights were not violated; and (d) the probate court properly admitted Gerald's copies of the Trust Amendments. We also deny Diane's motion for sanctions.

### A. *Diane Had the Burden of Proof*

Diane argues that the probate court improperly assigned the burden of proof. She claims Gerald had the burden of disproving her claims for incapacity and undue influence. We disagree.

The party alleging a trust settlor lacked capacity or was unduly influenced usually must prove those allegations. The Legislature has established a rebuttable presumption that "all persons have the capacity to make decisions and to be responsible for their acts or decisions." (§ 810, subd. (a).) Consistent with this presumption, "'[a] person challenging the validity of a trust instrument on the grounds that the trustor lacked capacity to execute the document or did so under the undue influence of another carries the heavy burden of proving such allegations.'" (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1040; accord, *Eyford v. Nord* (2021) 62 Cal.App.5th 112, 122; Ross and Cohen, Cal. Practice Guide: Probate (The Rutter Group 2022) ch. 15-A, ¶ 15:152.)

Diane invokes burden-shifting presumptions that do not apply. First, as to undue influence, she cites to section 21380. That section establishes a rebuttable presumption of undue influence if an instrument makes a donative transfer to a person "who transcribed the instrument or caused it to be transcribed and who was in a fiduciary relationship with the transferor when the instrument was transcribed." (§ 21380, subd. (a)(2).) It also establishes a conclusive presumption of undue influence if the instrument makes a donative transfer to "the person who drafted the donative instrument" or to one of the drafter's relatives or associates. (§ 21380, subd. (c).)

Section 21380 does not affect this case. Gerald and the other alleged beneficiaries of undue influence (Evelyn's sister and nieces) fall within a specific exemption for close relatives. (See § 21382, subd. (a) [section 21380 does not apply to any donative transfer to "a person who is related by blood or affinity, within the fourth degree, to the transferor"]; § 13 [sister is related in second degree and niece or nephew is related in third degree].)[6] And, beyond the statutory exemption, Diane did not even allege—much less prove—that Gerald or any of his relatives or associates was involved in drafting or transcribing the Trust Amendments or that any of them were fiduciaries of Diane at the time the Trust Amendments were drafted or transcribed. (See § 21380, subds. (a)(2), (c); *Rice v. Clark* (2002) 28 Cal.4th 89, 101–105.) Thus,

---

[6] On appeal, Diane newly alleges that Evelyn was subjected to undue influence by attorney Kristof. Diane's fourth amended petition made no such allegation. We need not and do not address this new theory on appeal. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 ["'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal'"].)

10

from any angle, the probate court was correct to not apply burden shifting under section 21380.

Diane also invokes Civil Code section 39. That contract-law rule establishes a rebuttable presumption that a person who made a contract is of unsound mind "if the person is substantially unable to manage his or her own financial resources or resist fraud or undue influence." (Civ. Code, § 39, subd. (b).) The relationship of Civil Code section 39 to the other capacity standards that exist under California law for the execution of a trust instrument may present difficult legal and factual questions and depend on the complexity of the instrument at issue. (See *In re Marriage of Greenway* (2013) 217 Cal.App.4th 628, 642 [discussing relationship between Civ. Code, § 39 and other capacity standards contained in Prob. Code, §§ 811 and 812]; *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1350–1351 (*Lintz*) [discussing application of contract capacity standards to trust instruments].) But we need not address those issues. Diane has put the cart before the horse. For Civil Code section 39's burden-shifting presumption to apply, there must be a showing that the person whose capacity to contract is challenged was in fact "substantially unable to manage his or her own financial resources or resist fraud or undue influence." (Civ. Code, § 39, subd. (b).) Here, as we discuss elsewhere in this opinion, there was no such showing. Rather, the evidence at trial tended to prove that Evelyn was well organized and independent. Accordingly, the probate court properly held Diane to her burden of proof. We now address whether she met that burden.

B. *Substantial Evidence Supports the Finding that Diane Failed to Prove Her Claims*

Diane argues that the evidence she presented required the probate court to invalidate the Trust Amendments on three grounds: Evelyn lacked

11

capacity to make the amendments, she was unduly influenced in so doing, and the Trust Amendments did not reflect Evelyn's overall intent. We disagree.

### 1. *Standard of Review*

"Appeals challenging an order granting a CCP § 631.8 defense motion for judgment in a nonjury trial are reviewed under the substantial evidence standard: Appellate courts defer to the trial court's factual findings and will affirm so long as the findings are supported by 'substantial evidence.'" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ch. 8-C ¶ 8:150.) Where the judgment is based on the trial court's finding that the plaintiff-appellant failed to meet her burden of proof, this standard requires the appellate court to determine "whether the evidence compels a finding in favor of appellant as a matter of law." (*Ibid.*, citing *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 732–733 (*Eriksson*).) Put differently, "'the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Eriksson*, at p. 733.)

Diane contends that our review should be de novo because, according to Diane, the court's statement of decision did not adequately explain the decision's factual and legal basis as to each principal controverted issue, as required by Code of Civil Procedure section 632. We conclude otherwise.

"A statement of decision need not address all the legal and factual issues raised by the parties. Instead, it need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision."

(*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124–1125.)
Here, the probate court summarized the relevant testimony. It observed that no testimony and no documentary evidence supported Diane's incapacity, undue influence, and intent theories—i.e., all three of the theories Diane had pled in support of the sole cause of action at issue in the trial. The court also observed that document examiner Fisher's testimony did not substantiate Diane's allegation that Gerald's copies of the Trust Amendments were inauthentic and concluded Diane had failed to prove inauthenticity. Finally, after discussing the law of capacity and undue influence, the court explained that the judgment in Gerald's favor was based on Diane's failure to meet her burden to prove her claims. This was enough to comply with Code of Civil Procedure section 632. (See *Muzquiz v. City of Emeryville, supra,* 79 Cal.App.4th at p. 1125 [statement of decision need provide only "ultimate findings" not "evidentiary ones"].) Accordingly, our review here is for substantial evidence.[7]

2. *Analysis*

a. *Capacity*

While different rules for capacity may apply to different trusts, the parties agree, and we accept for sake of argument, that the capacity standard

---

[7] We need not and do not address Gerald's contention that Diane forfeited claims of deficiencies in the statement of decision and that this court should therefore apply the doctrine of implied findings. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134.) The doctrine's application is immaterial in light of our conclusion below that substantial evidence supported the probate court's express findings that Diane failed to prove her claims.

13

most favorable to Diane applies.[8] That standard is contained in sections 810 to 812. Under that standard, a person is presumed mentally capable of creating or amending a trust instrument unless the challenger can show (1) the person suffered from one of the listed mental deficits, and (2) there is a correlation between that mental deficit and the "decision or acts in question." (§ 811, subd. (a).) The deficit must "significantly impair[] the person's ability to understand and appreciate the consequences of his or her actions *with regard to the type of act or decision in question.*" (§ 811, subd. (b), italics added.) We also assume arguendo that upon a proper showing Civil Code section 39 would apply. As discussed above, that statute permits a court to find that a person lacks contractual capacity "if the person is substantially unable to manage his or her own financial resources or resist fraud or undue influence." (Civ. Code, § 39, subd. (b).)

Applying those standards, there is substantial evidence that Diane failed to prove lack of capacity. Attorney Kristof, who drafted the Trust Amendments and was present when Evelyn executed them, testified that she never had reason to doubt Evelyn's capacity. Evelyn's financial advisor similarly testified that he never had reason to question her capacity. To the contrary, he testified, she was very organized and understood all their tax discussions.

---

[8] A settlor's capacity to amend a trust depends upon the complexity of the instrument and amendment at issue. For an amendment akin in complexity to a will, a settlor need only have capacity in the sense provided by section 6100.5, which applies to wills. But to be capable of making a more complex amendment, a settlor must have capacity in the sense provided by sections 810 to 812. (*Andersen v. Hunt* (2011) 196 Cal.App.4th 722, 726–729.) Here, both parties' appellate briefs assume that the standard more favorable for Diane, i.e., the standard of sections 810 to 812, applies.

14

Diane argues that the court erroneously overlooked Evelyn's hearing loss and behavior that Diane claims was symptomatic of OCD (regular gambling, extreme cleanliness, and refusal to keep food at home in favor of eating out). But there was no evidence that Evelyn's hearing loss impacted her communications about the Trust Amendments. Nor was there evidence that Evelyn was diagnosed with OCD, much less that this alleged mental deficit—or any other—significantly impaired Evelyn's ability to understand and appreciate the consequences of executing the Trust Amendments. And there was no evidence that the supposed OCD or any other mental deficit made Evelyn generally incapable of managing her own affairs or resisting fraud or undue influence. Thus, Diane's evidence was insufficient to support a finding of incapacity, and certainly did not compel such a finding. (See § 811, subd. (b); Civ. Code, § 39, subd. (b).)

b. *Undue Influence*

"'Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." (Welf. & Inst. Code, § 15610.70, subd. (a); see also § 86 [incorporating this definition of undue influence into the Probate Code].) In determining whether a result was produced by undue influence, the court must consider the vulnerability of the alleged victim, the alleged perpetrator's actions and apparent authority, and the equity of the result. (Welf. & Inst. Code, § 15610.70, subd. (a).) "Evidence of the equity of the result may include . . . any divergence from the victim's prior intent." (*Id*., § 15610.70, subd. (a)(4).) "Evidence of an inequitable result, without more, is not sufficient to prove undue influence." (*Id*., § 15610.70, subd. (b).) "[I]n the context of a testamentary disposition of property by will or trust" undue

15

influence means "'pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency.'" (*Lintz*, *supra*, 222 Cal.App.4th at p. 1354.)

Here, substantial evidence supports the finding that Diane failed to prove undue influence. Diane presented no evidence that Evelyn was particularly vulnerable at the time she executed the Trust Amendments or that she did so as the result of excessive persuasion by Gerald, his mother, or his sisters. (See Welf. & Inst. Code, § 15610.70, subd. (a).) Indeed, Diane presented no evidence of any conduct at all by the defendants that might have persuaded Evelyn to execute the amendments. Gerald's mere promise to take care of Diane fell far short of compelling a finding that he improperly overcame Evelyn's free will. (See *ibid*.)

### c. *Intent*

In their appellate briefs, the parties dispute whether—independent of incapacity or undue influence—a trust amendment may be invalidated on the ground that it deviated from the settlor's intent. (See *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 ["'In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument'"].) We need not and do not address this dispute. Even assuming that Diane could, as a matter of law, introduce evidence relevant to Evelyn's intent, the probate court reasonably concluded that Diane did not, in fact, introduce evidence that supported her position—she failed to prove that Evelyn intended to do anything other than dispose of her property in the manner reflected in the Trust Amendments.

To start, without a showing of incapacity or undue influence (which was not made here), Evelyn's voluntary execution of the Trust Amendments supported a reasonable inference that the amendments conformed to Evelyn's intent. Diane did not introduce evidence to undermine that inference. According to Kristof and the financial advisor, Evelyn's purpose in executing the 2002 amendment was to ensure that Diane's inheritance would not disqualify Diane from continuing to receive means-tested public benefits. Diane does not contend that the 2002 amendment did not realize that intention. Instead, she contends that Evelyn did not intend to confer discretion on the successor trustee to terminate the trust, even under the conditions specified in the 2002 amendment. But Diane produced no evidence suggesting that this was so. No evidence introduced at trial compelled a conclusion that Evelyn did not intend to confer trust-terminating discretion on the successor trustee. The probate court reasonably could have inferred that Evelyn conferred such discretion upon her sister, nephew, and other relatives intentionally, because doing so was consistent with Evelyn's "unwavering trust" in those relatives to care for Diane.

Thus, as to all three of Diane's bases for challenging the Trust Amendments—lack of capacity, undue influence, and intent—substantial evidence supports the probate court's findings that Diane did not prove her claims.

C. *Diane's Due Process Rights Were Not Violated*

As we discuss above, in March 2017, Judge Barry signed an order overruling Gerald's demurrer to Diane's fourth amended petition, but at the same time directing that Diane's second cause of action would not be adjudicated at trial. When the case was tried in July 2019, Judge Juárez

17

enforced the March 2017 order and barred Diane from litigating her second cause of action. Diane contends that enforcement of the March 2017 order violated her due process rights because: (1) the order failed to reflect Judge Barry's ruling as previously stated in the judge's oral comments and minute order; and (2) Diane received constitutionally inadequate notice of the order. We disagree on both counts.

First, Judge Juárez correctly viewed the March 2017 order signed by Judge Barry as the court's ruling. Diane relies on prior comments made by Judge Barry during the hearings in September 2016 and January 2017, as well as the minute order from the latter hearing. As we discuss above, however, in both September 2016 and January 2017, Judge Barry made clear that he did not intend to allow Diane to pursue her second cause of action in the probate proceeding. Moreover, during both the September 2016 and January 2017 hearings, Judge Barry expressly directed Gerald's counsel to prepare a proposed order reflecting the court's ruling. After Gerald's counsel did so, rather than reject or modify the proposed order, Judge Barry adopted it by affixing his signature. The signed final order constitutes the court's ruling, superseding any related oral comments and minutes. (See *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633 ["a judge's comments in oral argument may never be used to impeach the final order"]; *Smith v. Smith* (1941) 45 Cal.App.2d 212, 214 [minute entries authorizing subsequent orders were not themselves final orders: "After either minute entry had been made, the trial judge could have declined to sign an order carrying into effect the substance of the minute entry, on the ground that he had changed his mind and would in fact sign an order making opposite disposition of the motion before him"].)

18

Second, any deficiency in Diane's notice of the March 2017 order did not violate her due process rights, because the alleged deficiency was wholly attributable to her own counsel's failure. The California Rules of Court require an attorney or self-represented party whose mailing address changes while an action is pending to "serve on all parties and file a written notice of the change." (Cal. Rules of Court, rule 2.200.) "'[T]he "person to be served" has the burden of notifying the court of any change of address, and failure so to do does not enable him [or her] to claim improper notice.'" (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 31.)

Here, on March 15, 2017, by overnight mail, Gerald's counsel served the proposed order later adopted by the court to the address of record for Diane's counsel. Diane's counsel did not serve notice of a change of address until months later. She filed the notice with the court later still. Because this negligent omission caused any deficiency in Diane's notice, Diane's due process right to notice was not violated. (See *Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 903 [trial court did not violate defendants' due process rights by entering default judgment upon defendants' failure to appear at trial, where defendants' ignorance of trial date was caused by their own failure to file notice of change of address]; cf. *Kramer v. Traditional Escrow, Inc.*, *supra*, 56 Cal.App.5th at pp. 29–37 [trial court abused its discretion in granting defendants relief from default judgment, where defendants' ignorance of plaintiff's amended complaint was caused by their own negligence in, inter alia, failing to file notice of change of address].)

D. *The Probate Court Acted Within Its Discretion in Admitting Gerald's Copies of the Trust Amendments*

Diane contends that the probate court abused its discretion when it admitted Gerald's copies of the Trust Amendments into evidence without

requiring Gerald to authenticate them under Evidence Code section 1402. Her argument is that because the document examiner, Fisher, offered an opinion that Gerald's copies of the Trust Amendments had been altered, Gerald's separate authentication under section 1402 was required. We disagree.

"Evidence Code section 1402 provides '[t]he party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, *in a part material to the question in dispute*, must account for the alteration or appearance thereof.'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1014, italics added.) Here, the statute's condition precedent was not met. Diane produced no evidence that any alleged alteration was material. Fisher merely identified nontextual marks such as those left by staplers and hole punches. As the probate court observed, Fisher "could not say what substantive text portions, if any, of the Trust had been altered," and "[n]one of Fisher's opinions substantiated Petitioner's argument that the Trust had been altered in any way that modified the substance of the Trust." Because the alterations were not material to the issues in dispute, Gerald had no burden to account for them. (See Evid. Code, § 1402; *People v. Hovarter*, *supra*, 44 Cal.4th at p. 1014 [trial court acted within its discretion in finding copies of log sheets had been authenticated without requiring proponent to explain markings on copies that did not exist on originals, where markings were immaterial to parties' dispute].)

Diane also argues that Gerald's copy of the 2002 amendment could not be authenticated because attorney Kristof—the author of the amendment— "disclaimed" a copy that she had produced. Again, we disagree. Diane relies on a single page from Kristof's deposition transcript, which indicates only that Diane's counsel showed Kristof an unidentified document, to which

20

Kristof responded, "That's not my document." Nothing in the record identifies this document or otherwise supports Diane's assertion that Kristof disclaimed the 2002 amendment's authenticity.[9]

E. *Diane's Motion for Appellate Sanctions Is Denied*

Diane moves for sanctions based on an issue with the record on appeal. We deny her motion.

On March 30, 2022, this court issued an order granting Gerald's motion to borrow Diane's copy of the record pursuant to California Rules of Court, rule 8.153. The order stated: "Respondent shall return the copy of the record to appellant when the respondent's brief is filed." On August 31, the respondent's brief was filed. On September 20, Diane filed her reply brief.

On October 17, 2022, Diane moved for $20,790 in monetary sanctions against Gerald and/or his counsel. Diane argues that Gerald unreasonably violated California Rules of Court, rule 8.153 and this court's March 30 order by failing to timely return Diane's copies of the record in full. Diane further argues that the respondent's brief was intentionally deceitful and deficient in its formatting and citations to the record, in violation of Code of Civil Procedure 128.7, unspecified ethical rules, and California Rules of Court, rule 8.204.

---

[9] Each of Diane's appellate briefs includes a single citation to Evidence Code section 1523 (the secondary evidence rule), but neither brief articulates any argument applying this rule to the facts of this case. We conclude that Diane has forfeited any contention that the court admitted evidence in violation of the secondary evidence rule. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he [or she] wants us to adopt'"].)

We decline to impose any sanctions. The exhibits to Diane's motion include a September 2, 2022 email from Gerald's counsel stating that his office had mailed the record the day after the respondent's brief was filed, and that if there was any delay in the record's return, he would not oppose a reasonable extension of Diane's time to file a reply brief. Diane never sought such an extension. Thus, her conclusory assertion that she was prejudiced by a delay appears meritless. Further, although Gerald's counsel admittedly misplaced Diane's copy of the third volume of the clerk's transcript, there is no dispute that he provided Diane's counsel with a replacement copy. Diane identifies no omission from the replacement copy other than a single page, which appears to have been the first page of objections Diane filed in opposition to a motion that was decided years before trial and that has no obvious relevance to this appeal. Diane does not claim that this motion—much less the single omitted page—is in any way material to her appellate contentions. We conclude that any noncompliance with California Rules of Court, rule 8.153 or this court's March 30, 2022 order was de minimis.

We further decline to impose any sanctions in connection with Gerald's filing of the respondent's brief. We have reviewed the brief and discern no deficiencies that warrant the imposition of sanctions. Nor do we see any support for Diane's speculative allegation that Gerald's counsel intended to deceive this court. Further, Diane's reliance on Code of Civil Procedure 128.7 is misplaced, as that statute does not apply in the appellate courts. (*Bryan v. Bank of America* (2001) 86 Cal.App.4th 185, 197–199.) Accordingly, Diane's motion for sanctions is denied.

## DISPOSITION

The order granting Gerald's motion for judgment is affirmed.  Diane's motion for sanctions is denied.  Gerald is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


DAUM, J.[*]

WE CONCUR:


CURREY, Acting P. J.


COLLINS, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.