Filed 3/20/26  Gonzales v. Armijo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES C. GONZALES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RITA ARMIJO, as Personal Representative, etc.,<br><br>    Defendant and Appellant. | D085711<br><br><br><br>(Super. Ct. No. TRUPS1900134) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michelle H. Gilleece, Judge.  Affirmed.

The DLJ Law Firm and Dorian L. Jackson, for Defendant and Appellant.

Law Office of Robert J. Spitz and Robert J. Spitz, for Plaintiff and Respondent.

## INTRODUCTION

In 2009, Felicitas P. Gonzales executed a trust, naming her son, Victor M. Gonzales, as the sole beneficiary. In 2017, Felicitas executed a second trust, naming Victor, his brother James C. Gonzales, and their other siblings as beneficiaries. The main asset identified in both trusts is Felicitas's house in Ontario, California.

James filed a petition to invalidate the 2009 trust due to Victor's undue influence and to confirm the 2017 trust. After filing his response to James's petition, Victor passed away. Victor's daughter, Rita Armijo, as Victor's personal representative and administrator of his estate, was substituted in as a defendant. Following a court trial, the probate court entered judgment finding the 2009 trust invalid based on Victor's undue influence over Felicitas.

Rita appeals from the judgment raising four claims: (1) the probate court lacked jurisdiction because James did not file the requisite creditor claim and did not timely substitute Rita as a defendant in this action; (2) the court based its judgment on an unpled legal theory; (3) the court's finding of undue influence is not supported by sufficient evidence; and (4) the court's evidentiary findings and rulings are not supported by the evidence. We reject each of Rita's arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.

### *Felicitas's Relationship with Victor*

Felicitas had five children. Victor, the youngest, was the only one of her children who never moved out of her home. All her other children owned their own homes. Felicitas and Victor would argue, after which James had seen Felicitas crying and disheveled. James once reported Victor to adult

2

protective services for using drugs around Felicitas. Felicitas kicked Victor out of the house multiple times, but she always gave in later and allowed him to move back into her home.

As of 2009, Felicitas and Victor had a good relationship, although they fought over money. Victor often asked Felicitas for money, and she obliged. She also gave money to her other children. Felicitas would not have trusted Victor to manage her finances due to his drug use.

## II.

### *Felicitas Executes Two Trusts*

In June 2009, Felicitas executed the Felicitas P. Gonzales Family Trust (2009 trust) and conveyed to the trust the house she owned in Ontario, California. She named Victor as the sole beneficiary, first successor trustee, and executor, with one of Victor's sisters named as second successor trustee and successor executor. In December 2009, Felicitas recorded a quitclaim deed transferring the house to the trust.

In 2012, Victor was convicted of elder abuse against Felicitas and was sentenced to prison.

On several occasions in 2017, Felicitas said she wanted her assets to pass to her children equally. According to James, Felicitas believed she had previously signed some papers at Victor's direction, but she did not know what they were. This made her worry that all her assets would pass to Victor.

In July 2017, Felicitas executed the Felicitas Gonzales Living Trust (2017 trust), directing that her assets be divided equally among her five

3

children.[1]  Felicitas named herself and James as co-trustees.

In March 2019, Victor recorded a trust transfer deed transferring Felicitas's house from the 2009 trust to himself.

### III.

*James Commences the Instant Action to Invalidate the 2009 Trust*

In June 2019, James commenced this action by filing the original petition against Victor, asserting a cause of action to invalidate the 2009 trust under Probate Code[2] section 17200.  In support of that cause of action, James alleged that he and his other siblings "have a property right and interest in" Felicitas's house.  In July 2019, James filed a notice of lis pendens on the house.

In August 2019, Victor filed his response to the petition.  In November 2019, Victor passed away.  In March 2020, Rita was appointed as administrator of Victor's estate.

At a September 2020 hearing, Rita purportedly appeared as Victor's personal representative.  In May 2021, the probate court granted James's motion to amend the petition to add defendants to the action.  The following month, James filed the operative first amended petition, naming Victor's estate and Rita, as the estate's personal representative, as defendants.

In June 2023, Rita filed a motion for summary judgment or summary adjudication.  In October 2023, the probate court granted Rita's motion for summary adjudication in large part.  But it denied the motion as to James's claim to invalidate the 2009 trust under section 17200 based on undue

---

[1]    The copy of the 2017 trust included in the record before us identifies as trust property "the property described in <u>Schedule A</u> to the Trust."  However, the record does not include any such schedule related to the 2017 trust.

[2]    Further unspecified statutory references are to the Probate Code.

4

influence and his claim for breach of fiduciary duty.

The matter proceeded to a court trial on the surviving two claims. On November 28, 2023, the court found the 2009 trust invalid because it was obtained through Victor's undue influence over Felicitas, but dismissed James's claim for breach of fiduciary duty for failure of proof. In May 2024, the probate court entered judgment consistent with its ruling.

DISCUSSION

I.

*Standard of Review*

" 'We apply well-established standards of review to a judgment based upon a statement of decision issued after a bench trial. . . . We review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard.' " (*Rojas v. HSBC Card Servs. Inc.* (2023) 93 Cal.App.5th 860, 872–873, citation omitted.) We presume the trial court followed applicable law and affirm the judgment if it is correct on any theory. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) An error requires reversal only when, "in the absence of the error, a result more favorable to plaintiffs probably would have occurred." (*Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 114.) The burden is on the appellant to show reversible error. (*Patz v. City of San Diego* (2025) 113 Cal.App.5th 225, 275 (*Patz*).)

II.

*Creditor Claim and Statute of Limitations*

Rita contends the probate court erred by failing to find this action barred as a matter of law because James did not file a creditor claim against Victor's estate as required by Probate Code section 9370 or amend the petition to add a new defendant within the statute of limitations provided for

under Code of Civil Procedure section 366.2. We find these arguments unpersuasive.[3]

A.    *Rita Has Not Shown James Was Required to File a Creditor Claim with Respect to the Cause of Action at Issue Here*

Section 9370, subdivision (a), provides that an action against a decedent may be continued against the decedent's personal representative where three conditions are met: (1) a claim, as statutorily defined, is first filed against the decedent's estate; (2) the estate rejects the claim; and (3) the plaintiff applies to the court to substitute the decedent's personal representative within three months of a notice of rejection of the claim. The term "claim," as used in section 9370, is defined as "a demand for payment" (§ 9000, subd. (a)), and, thus, refers only to "a demand for money" (*Wood v. Brown* (1974) 39 Cal.App.3d 232, 236 [addressing § 709, the predecessor to § 9370]). The applicable definition expressly excludes "a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate." (§ 9000, subd. (b).)

Rita asserts that "some of [James's] claims requested monetary awards

---

3    Rita asks this court to take judicial notice of the petition for probate of Felicitas's estate, the petition for probate of Victor's estate, the proof of publication of the notice of petition for probate of Victor's estate, and the order for probate of Victor's estate. She argues these records are necessary for this court's review of her claim that James failed to file a creditor claim against Victor's estate. But, as we discuss later, Rita has failed to show that James was required to file a creditor claim as to his cause of action to invalidate the 2009 trust based on undue influence, the cause of action at issue in this appeal. Accordingly, records offered to support the argument that James did not file a creditor claim against Victor's estate "are not 'necessary, helpful, or relevant' to the resolution of the appeal." (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 819.) We therefore deny Rita's request for judicial notice.

6

against Victor after his death," but does not acknowledge that James's only surviving claim subject to the judgment against Rita at issue here is James's non-monetary claim to invalidate the 2009 trust under section 17200. Rita has not addressed, nor established, the applicability of section 9370 to this non-monetary claim, which sought to determine property rights to Felicitas's house. Notably, the probate court found "[James's] claims are not required to be preceded by a creditor[ ] claim in order to preserve his time to file the trust contest." Rita has not shown otherwise. Accordingly, Rita has not carried her burden of showing reversible error on this basis. (*Patz, supra*, 113 Cal.App.5th at p. 275.)

B.      *The Statute of Limitations Under Code of Civil Procedure Section 366.2 Does Not Bar This Action*

Code of Civil Procedure section 366.2, subdivision (a), provides: "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." However, for purposes of this statute, an amended pleading relates back to a timely-filed original pleading where the amendment adds as a defendant a decedent's personal representative. (*Burgos v. Tamulonis* (1994) 28 Cal.App.4th 757, 761–763 [addressing Code Civ. Proc., § 353, subd. (b), the predecessor to Code Civ. Proc., § 366.2, subd. (a)].) Rita has not alleged that James's original petition was untimely filed. Thus, James's first amended petition, which added Rita as a defendant, relates back to the filing of the original petition against Victor for purposes of the statute of limitations under Code of Civil Procedure section 366.2,

7

subdivision (a).

## III.

### *Judgment Based on an Unpled Theory*

Next, Rita argues the probate court violated her due process rights by basing its judgment on an unpled legal theory. Specifically, she argues the court's judgment relied on findings under Welfare and Institutions Code section 15610.70 despite that James did not cite this provision in his pleadings. We are unpersuaded.

The Probate Code expressly provides that " '[u]ndue influence' has the same meaning as defined in Section 15610.70 of the Welfare and Institutions Code." (Prob. Code, § 86.) For this reason, when considering a claim of undue influence under the Probate Code, courts apply the same standard as applied under Welfare and Institutions Code section 15610.70. (See *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1356, fn. 3 (*Lintz*) [the standards for undue influence under the Prob. Code and the Welf. & Inst. Code "are now the same"].)

Here, James presented to the probate court a claim to invalidate the 2009 trust based on undue influence. In analyzing James's claim, the probate court applied the factors for determining undue influence as provided under Welfare and Institutions Code section 15610.70. As Welfare and Institutions Code section 15610.70 applies the same standard as the probate code, the court's analysis was entirely appropriate and did not insert into its reasoning an unpled legal theory.

## IV.

### *Sufficiency of Evidence of Undue Influence*

Rita presents several challenges to the sufficiency of the evidence to support the probate court's finding of undue influence. We reject each

8

argument.

A.    *Standard of Review*

We review the probate court's finding of undue influence for substantial evidence.  (*Butler v. LeBouef* (2016) 248 Cal.App.4th 198, 208.)  " 'Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' "  (*Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125 (*Keading*).)

"A person challenging the validity of a trust instrument on the ground[ ] that the trustor . . . execute[d] the document . . . under the undue influence of another carries the heavy burden of proving such allegations."  (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 545, as modified on denial of rehg. Nov. 4, 2015 (*Doolittle*).)  Such a showing must be made by clear and convincing evidence.  (*Ibid.*)  " '[U]ndue influence can be established by circumstantial evidence so long as the evidence raises more than a mere suspicion that undue influence was used.' "  (*Estate of Truckenmiller* (1979) 97 Cal.App.3d 326, 334.)  It "will not be inferred from 'slight evidence.' " (*Ibid.*)

B.    *The Probate Court Considered Each of the Applicable Elements Under Welfare and Institutions Code Section 15610.70*

While continuing to suggest James did not plead a claim based on Welfare and Institutions Code section 15610.70, Rita argues the probate court failed to consider each of the four factors enumerated by that provision for determining the existence of undue influence.

As we have already stated, "undue influence" under the Probate Code "has the same meaning as defined in Section 15610.70 of the Welfare and

9

Institutions Code" (Prob. Code, § 86), and, thus, the applicable standards are the same for each (*Lintz, supra*, 222 Cal.App.4th at p. 1356, fn. 3).  In determining whether undue influence exists, courts consider:  (1) the victim's vulnerability; (2) the influencer's apparent authority; (3) the tactics used by the influencer; and (4) the equity of the result.  (Welf. & Inst. Code, § 15610.70, subd. (a).)

Here, the probate court expressly stated it considered the applicable factors, and then it discussed the evidence that satisfied these factors.  As we discuss later, substantial evidence supported the court's findings as to each.

C.     *The Probate Court Did Not Err by Failing to Consider Sections 810 to 812*

Rita next argues the probate court erred by failing to consider sections 810 to 812, which, she asserts, are prerequisites to a finding of vulnerability of the victim and undue influence.

Section 810, subdivision (a), establishes "a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions."  Sections 811 and 812 set out the criteria for determining whether an individual has the capacity to make a decision or do a certain act.

Citing *Doolittle, supra*, 241 Cal.App.4th at pages 545–546, Rita asserts "a party who seeks to set aside a trust based on undue influence must overcome the presumption of [section] 810."  Rita misconstrues *Doolittle*.  In *Doolittle*, the court discussed a challenge to "the validity of a trust instrument on the grounds that the trustor lacked capacity to execute the document *or* did so under the undue influence of another."  (*Id*. at p. 545, italics added.)  It then set out the standard for determining whether a trustor lacked capacity to execute a trust pursuant to sections 810 to 812, followed by the standard

10

for proving undue influence. (*Doolittle*, at p. 545.) Thus, the court identified two scenarios under which a trust might be deemed invalid: (1) where the trustor lacked the requisite capacity and (2) where the trustor executed the trust under undue influence. Nothing in *Doolittle* suggests a finding pursuant to sections 810 to 812 is a prerequisite for finding the existence of undue influence.

D. *Substantial Evidence Supports the Probate Court's Finding That the Vulnerability Factor Was Supported by Clear and Convincing Evidence*

Rita contends no evidence was presented to support a finding that Felicitas was vulnerable, and the probate court's ruling "contains no discussion of this element at all." This contention lacks merit.

As relevant here, "[e]vidence of vulnerability may include, but is not limited to, . . . emotional distress [and] isolation." (Welf. & Inst. Code, § 15610.70, subd. (a)(1).) The probate court recognized that vulnerability is a factor to be considered pursuant to Welfare and Institutions Code section 15610.70 and stated it considered this factor. It then found Felicitas lived alone with Victor, his conduct toward her exhibited a manipulative relationship, he bullied her, and, at times, she would cry and appear disheveled after arguing with him. The record supports the court's findings as to this factor, and these findings are sufficient to show Felicitas was emotionally distressed and isolated.

Rita faults the probate court's determination regarding the vulnerability factor because it "neither referenced nor considered any medical records, testimony from treating physicians, medical experts, or from family members concerning Felicitas's mental, physical or emotional condition" at the time she executed the 2009 trust, and that the evidence showed Felicitas was " 'very coherent' and 'paid all her bills and did everything herself' "

11

during that time.  While factors such as "incapacity, illness, disability, injury, . . . impaired cognitive function, . . . or dependency" may be relevant to a determination of vulnerability (Welf. & Inst. Code, § 15610.70, subd. (a)(1)), such facts are not essential to a finding under this factor.  As stated, sufficient evidence supports the probate court's findings as to the existence of other relevant facts.

E.    *The Evidence Produced at Trial Did Not Negate the Authority Factor*

Next, Rita asserts the evidence produced at trial showed Felicitas did not trust or rely on Victor, and this evidence negated any evidence supporting the factor requiring that he asserted authority over her.  Rita further argues the probate court did not specify which of its factual findings it attributed to this factor.  We are not persuaded.

"Evidence of apparent authority may include, but is not limited to, status as a . . . family member."  (Welf. & Inst. Code, § 15610.70, subd. (a)(2).)  Again, the probate court stated it considered this factor.  Although it did not specifically label which factual findings it attributed to each factor, there is no dispute that Victor was Felicitas's family member.  In addition, the court made other factual findings relevant to a determination that Victor exercised authority over Felicitas.

Specifically, the court found Victor aggressively demanded money from Felicitas, he had control over some of her finances in 2009 when the trust was executed, and he was the only person who could have assisted her in executing the 2009 trust.  These findings are supported by the record.  It is immaterial to our inquiry that some other evidence Rita identifies may weigh against this factor.  (*Keading, supra*, 60 Cal.App.5th at p. 1125 [when we consider the sufficiency of the evidence to support a judgment, we " 'liberally construe[ ] [findings of fact] to support the judgment and . . . consider the

evidence in the light most favorable to the prevailing party' "].)

F.    *Substantial Evidence Supports the Probate Court's Finding That the Tactics Factor Was Supported by Clear and Convincing Evidence*

Rita further argues no evidence was presented concerning Victor's actions or tactics underlying his undue influence. We reject this claim too.

"Evidence of actions or tactics used may include, but is not limited to," the use of "intimidation[ ] or coercion" and the use of "secrecy in effecting . . . changes" to property rights. (Welf. & Inst. Code, § 15610.70, subd. (a)(3).) As relevant to this factor, the probate court found Victor abused and bullied Felicitas, was "manipulative" and "aggressive" toward her, and he facilitated her execution of the 2009 trust without the knowledge of any of his siblings. These findings are supported by the record and are sufficient to support the probate court's finding that James had satisfied this factor by clear and convincing evidence.

G.    *The Probate Court's Finding Regarding Equity Did Not Improperly Shift the Burden of Proof*

Rita does not contest the sufficiency of the evidence to support the probate court's finding as to the factor regarding the equity of the result. Instead, she suggests the probate court shifted the burden of proof by finding there was no evidence presented that Felicitas wanted to leave all her assets to Victor. Rita further argues evidence of an inequitable result, alone, does not prove undue influence.

The probate court made a finding regarding the equity of the result under the challenged trust, as required under Welfare and Institutions Code section 15610.70, subdivision (a)(4). In doing so, the court cited evidence that Felicitas made known to others that she wished her assets to be divided equally between all her children and weighed this against the lack of

13

evidence that she ever expressed an intent to leave the house only to Victor. Thus, the court merely weighed the evidence for and against a finding under this factor of the undue influence analysis. It did not shift the burden of proof.

Neither did the probate court rest its undue influence finding solely on the inequity of the result. As we have discussed, the court considered each of the factors enumerated in Welfare and Institutions Code section 15610.70 and the record supports its findings as to each factor.

V.

*Evidentiary Findings and Rulings*

Lastly, Rita challenges the probate court's evidentiary findings and rulings in six instances. We reject each of her contentions.

A.     *Consideration of Victor's 2012 Conviction*

First, Rita argues the probate court erred by relying on irrelevant evidence of Victor's 2012 criminal conviction to support its finding that he maintained a " 'manipulative relationship' " with Felicitas in 2009.

Only relevant evidence is admissible. (Evid. Code, § 350.) " 'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210.) In addition, in making an undue influence determination, a probate court " '*must* determine the issue of undue influence by inferences drawn from *all* the facts and circumstances.' " (*Lintz, supra*, 222 Cal.App.4th at p. 1355, italics added.) In doing so, the court may consider circumstantial evidence, and its "undue influence finding need not be supported by direct evidence of undue influence *at the moment* decedent signed the trust instruments." (*Ibid.*, italics added.)

Evidence that Victor was convicted in 2012 of elder abuse against

14

Felicitas was circumstantial evidence that he had a pattern of exhibiting manipulative behavior toward her and had a "tendency in reason to prove or disprove" this fact (Evid. Code, § 210). Accordingly, the court properly considered this evidence.

B. *Finding Victor Was the Only Individual Who Could Have Facilitated the Execution of the 2009 Trust*

Second, Rita asserts the probate court made an unsupported assumption when it found Victor was the only person who could have facilitated Felicitas's execution of the 2009 trust.

The court's finding was not an unsupported assumption but, rather, was a proper inference made from the evidence presented at trial. (*Lintz, supra*, 222 Cal.App.4th at p. 1355.) Specifically, the court based this finding on evidence that no one else lived with Felicitas at the relevant time, Victor had at least some involvement in her finances at that time, he possessed the 2009 trust at the time of her death, she did not know what she had signed when she executed the 2009 trust and did not have her own copy, and he was the only one who benefited from the 2009 trust. The court's finding is supported by the record.

C. *Consideration of Evidence That Victor Stole Money from Felicitas*

Third, Rita argues the probate court "held" Victor stole money from Felicitas, despite questioning the sufficiency of the evidence to substantiate such an allegation. We disagree with this characterization.

The probate court never "held" Victor stole money from Felicitas. It merely acknowledged in its written ruling after trial and in the judgment the existence of testimony that a large amount of money had been spent from Felicitas's savings account and that Victor had "misappropriat[ed]" funds. Specifically, with respect to the issue of undue influence, the probate court

15

acknowledged that James "speculated" about money that was spent from Felicitas's savings account but dismissed this testimony because "the bank records did not show how the [missing] money was spent" and "[t]here was no other witness testimony on the use of these funds." And, with respect to its consideration of James's breach of fiduciary duty claim, the court acknowledged testimony from James and his sister "that Victor was misappropriating funds and using his mother's credit cards," but still found James had not established any fiduciary duty between Victor and Felicitas and, for this reason, dismissed James's breach of fiduciary duty claim. To the extent the court might have given any weight to this testimony in its analysis of James's breach of a fiduciary duty claim, Rita has not challenged the court's ruling on that claim here.

D.      *Whether Victor Recorded the Quitclaim Deed*

Fourth, Rita contends the evidence did not support the court's finding that Victor recorded the quitclaim deed transferring Felicitas's house into the 2009 trust. The probate court stated:

> A quitclaim deed was recorded, placing the title to
> [Felicitas's house] in the name of the 2009 [t]rust. *It
> appears Victor had this deed recorded.* Victor had the 2009
> [t]rust in his possession after his mother died. As the
> named successor trustee of the 2009 [t]rust, he recorded a
> deed transferring the [house] into his individual name after
> the death of Felicitas. Victor was the only beneficiary of
> the 2009 [t]rust, in spite of the fact that Felicitas had four
> other children with whom she had close relationships.
> (Italics added.)

Even if we found unreasonable the court's inference that Victor recorded the quitclaim deed transferring the house into the 2009 trust, Rita still has not established reversible error. The fact of who recorded this quitclaim deed is immaterial to the court's ultimate finding of undue

16

influence, as it relied on many other facts to find James had established undue influence by clear and convincing evidence. And, as explained herein, the court's finding of undue influence is supported by substantial evidence.

E.      *Consideration of Felicitas's Medical Condition in 2017*

Fifth, Rita asserts the court erred by finding testimony regarding Felicitas's medical condition in 2017 irrelevant to her execution of the 2009 trust.

In its written ruling after trial, the probate court found that "[m]uch of the evidence elicited on examination of the witnesses focused on the establishment of the 2017 trust which was not at issue in this trial[,] . . . [which] was not relevant." Rita contends that some of this evidence showed Felicitas had a brain aneurysm and confusion from a urinary tract infection in 2017, the same year James and his sister had discussions with Felicitas about who she wanted to inherit her assets. She does not, however, cite to any evidence showing what symptoms Felicitas experienced from her brain aneurysm or how those symptoms might have impacted her ability to express her testamentary intent. Although Rita points to evidence that Felicitas experienced "confusion" from a urinary tract infection, Rita does not cite any evidence indicating this confusion occurred around the time she expressed her testamentary intent to James and his sister, or that the confusion was in any way related to her desire to pass her assets to her children equally.

F.      *Evidence of Felicitas's 2009 Testamentary Intent*

Finally, Rita argues the probate court erroneously excluded evidence of Felicitas's 2009 testamentary intent and, thereby, improperly shifted the burden of proof. Specifically, Rita points to her own proposed testimony regarding what Victor told her about Felicitas's intent, which she alleges the court excluded.

17

Rita has forfeited her argument regarding the purported exclusion of testimony, as she has failed to provide, or cite to, sufficient evidentiary support. The page she cites in the record to support her argument that the probate court excluded her testimony does not show the court excluded any testimony, let alone the testimony at issue. It shows objections were made to certain testimony but does not specify what testimony was objected to or the result of those objections. It also shows the court excluded "[m]edical records." Even if evidence to support Rita's argument exists somewhere in the record before this court, she has not directed us to such evidence. Rita's failure to provide an adequate record, or to cite to evidentiary support for her argument within the record provided, renders this contention forfeited. (*Anton's Services Inc. v. Hagen* (2025) 116 Cal.App.5th 90, 104 [failure to cite to volume and page number of record where the relevant matter appears renders claim forfeited]; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [a reviewing court "is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived"].)

And, to the extent Rita argues again that the probate court shifted the burden of proof by stating there was no evidence that Felicitas expressed an intent to leave her house solely to Victor, as we have discussed, the court did not so shift the burden of proof. Rather, it compared this lack of evidence that Felicitas intended to leave her house solely to Victor to testimony that she intended to leave her assets to all her children equally, which was relevant to a determination of undue influence under Welfare and Institutions Code section 15610.70.

DISPOSITION

The judgment is affirmed.  Respondent James C. Gonzales is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.